McBRIDE, Judge.
On April 11, 1949, at about 11:30 o’clock, p. m., as a result of a collision between it and a Pontiac sedan in the intersection of Chartres and St. Ann Streets (both paved streets), a taxicab was thrown into and caused considerable damage to an ornamental iron post located on the downtown —river corner of said intersection, the post being one of the supports of the gallery of the Pontalba Building, which is owned by the Louisiana State Museum, By this suit, the State of Louisiana, on behalf of the Board of Curators of the Louisiana State Museum, on allegations that the accident was caused by the joint negligence of the operators of the two vehicles involved, seeks to recover the sum of $535, the cost of repairing the post. Im-pleaded as defendants are Toye Bros. Yellow Cab Company, a partnership, owner of the taxicab, Joseph Cassou, Sr., owner of the Pontiac sedan, and Joseph Cassou, Jr., its driver, and judgment is sought 'against them solidarity.
All defendants deny negligence. Toye Bros. Yellow Cab Company alleges that the accident was caused through the fault of young Cassou, and the Cassous plead that the accident was caused through the fault and negligence of the operator of the taxicab. Cassou, Sr., admits ownership of the Pontiac sedan, but avers that his son, who is an emancipated minor, was operating it on his own behalf, and that if his son was guilty of negligence, nevertheless he, Cassou, Sr., is not liable unto plaintiff.
After a trial, the judge a qua rendered judgment against Toye Bros. Yellow Cab Company and Joseph Cassou, Jr., as prayed for, and both of said defendants have appealed therefrom. Plaintiff did not appeal from that portion of the judgment which dismissed the suit against Joseph Cassou, Sr.
The scene of the accident is located in the heart of the Vieux Carre in New Orleans. Chartres Street parallels the Mississippi River, and is designated as a “one-way” street for the accommodation of traffic traveling in a downtown direction. St. Ann Street intersects Chartres at right angles, and is a “one-way” street for traffic traveling toward the river. Shortly before the accident, rain had fallen, and the surfaces *68 of the streets, as described by the witnesses, were slippery.
The Cabildo is located on the uptown-lake comer of the intersection, and the building is flush with the property line, and said corner is what is known as a “blind” corner, except that some arches in the building afford a partial view from Chartres Street a short distance into St. Ann Street, and from St. Ann a short distance into Chartres.
The taxicab was traveling down Chartres, and the Pontiac sedan, driven by young Cassou, was traveling on St. Ann toward the river. In other words, the sedan was approaching from the left of the taxicab. The cab was traveling somewhere around fifteen to eighteen miles an hour, and its driver testified that as it neared the intersection he looked through the arches of the Cabildo, which gave him a view of about fifteen feet back St. Ann Street, and he saw no vehicle coming, so he continued along, and that just as he was about three-quarters of the way across the intersection, the Pontiac automobile crashed into the left rear fender of the taxicab, with the result that the cab struck the iron-post of the Pontalba Building. Parenthetically, we might say that the photographs of the taxicab, which are part of the evidence, eloquently attest that the operator of the cab was in error when he stated that his vehicle was struck on the left rear fender, for the pictures unmistakably show that the point of impact was in the middle of the left side of the cab. As to the exact point in the intersection where the collision occurred, the operator of the cab also seems to be in error, as the tendency of the evidence is that the collision occurred about the center of the intersection. We deem it unnecessary to discuss the contention of ■counsel for the cab company, that the taxicab had preempted the intersection when the collision occurred,
■ Cassou, Jr., testified that he was driving about twenty miles an hour,' but it is our opinion that he was traveling at a speed greater than he claims. At a point some fifteen to seventeen feet before reaching the intersection proper, Cassou, upon seeing the cab emerge into the intersection, applied his brakes, with the result that his car skidded to the point of impact.
There is no question that Cassou, Jr., was guilty of negligence, and his counsel, with admirable frankness, concedes that fact. He was traveling at an excessive rate of speed toward a blind corner, without taking any steps whatever to ascertain, and was oblivious of, traffic conditions prevailing on Chartres Street.
The trial judge, as appears from his reasons. for judgment, was of the opinion that the driver of the Yellow Cab was likewise guilty of negligence, in that he was traveling between fifteen and eighteen miles an hour, on a wet and slippery street, at a blind comer, and failed to take those precautions which a reasonably prudent driver should have taken under the circumstances prevailing at the time of the accident.
We concur in the findings of the lower court, and there is no question in our minds that the accident was caused through the concurrent negligence of the drivers of both vehicles.
Section 2(b), Art. V, of Ordinance No. 13,702, C.C.S., of the City of New Orleans, which ordinance regulates the manner of the. use of the public streets by automobiles, limits the speed of automobiles to: “Fifteen miles an hour except on Boulevards and through streets, when approaching within fifty feet of and in traversing an intersection when the operator’s view is obstructed. An operator’s view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the streets entering such intersection for a distance of one hundred feet from such intersection.”
The arch through which Robertson, the driver of the taxicab, says he looked into St. Ann Street, is located several feet from the intersection. Robertson admits that he only “took a glance through there and you could see. about 15 feet,” and upon observing no vehicles on St. Ann Street, he continued forward, without further observation, into the intersection without lessening his rate.of speed to any extent. This testimony of Robertson alone is sufficient to *69 brand him with negligence. His view was obstructed during the last fifty feet of his approach to the intersection, and after talc-ing the quick glance through the arch, Robertson did nothing further to satisfy himself that a crossing of the intersection could be made with safety, but was content to rely on his observation made through the arch at a point some distance before the intersection was reached by his cab.
While the cited city ordinance literally requires only that the running speed of a automobile, within the last fifty feet before approaching a blind corner, be restricted to fifteen miles an hour, common sense would impose upon the driver the further' duty of carefully appraising traffic conditions in the intersecting street, before entering the intersection, all of which the driver of the taxicab failed to do. In a contingency such as existed, the motorist is required to bring his car to a point where his view of the intersection is unobstructed, and to make a careful survey of traffic conditions there, before attempting a crossing.
Plaintiff’s damages were clearly proved, and there is no contention as to the amount thereof.
The judgment of the trial court, which is amply supported by the record, is hereby affirmed.
Affirmed.